UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>JEREMY BRYANT,<br><br>　　　　　　　　Defendant. | CASE NO. CR23-5196 BHS<br><br>ORDER |

This matter is before the Court on Defendant Jeremy Bryant's Motion to Revoke the Detention Order. Dkt. 29. The Court concludes that, given Bryant's admissions of past assaults and candor about the likelihood that he would assault more children, there are no conditions of release that could reasonably assure the safety of the community. His motion is denied.

## I.   BACKGROUND

An undercover investigation into an online group involved in the distribution, possession, receipt, and production of child sexual abuse material (CSAM) lead to Bryant's arrest. Bryant was allegedly a member of this group, going by the username

ORDER - 1

"Ynglove88." Dkt. 1 at 4. Ynglove88's profile indicated that he is a thirty-four-year-old male from Washington State. *Id*. at 4–5. During chats with the undercover agent, this user allegedly admitted to sexual abuse of Minor Victim 1 (MV1), his biological daughter, and Minor Victim 2 (MV2), his stepson. He also allegedly offered to "share our kids" with the undercover agent. *Id*. at 6. The investigators traced "Ynglove88"'s internet protocol (IP) logs to Bryant, who was at the time a soldier living on an Army base in South Korea. *Id*. at 8–9.

Bryant agreed to a post-*Miranda*[1] interview with Army Criminal Investigative Division (CID) agents and admitted to the sexually assaulting MV1 and MV2. Dkt. 1 at 9. Bryant allegedly stated that he sexually assaulted MV2 during a family vacation when she was around 10 years old. *Id*. at 10. Bryant also allegedly admitted to CID Agents that he sexually touched MV1 approximately one year prior (in October 2021) by placing his hands on her genitals, over her underwear, for the purpose of his own sexual gratification. *Id*. Further, Bryant allegedly admitted over the course of the investigation to sexually assaulting MV1 on multiple other occasions, including when she was approximately seven years old. *Id*. 11–13. Bryant said that, during one of these occasions, his finger "slipped on her clitoris." *Id*. at 12. Toward the end of the interview, Bryant stated that he had offered his services as a babysitter to members of the Army community in South Korea. Bryant stated that, if he was to babysit a child, there was approximately an "80% chance" he would sexually assault them. Dkt. 1 at 10.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1    The Government filed a criminal complaint charging Bryant with one count of
2 possession of child pornography in violation of 18 U.S.C. § 2252(a)(4), one count of
3 aggravated sexual abuse of a child in violation of 18 U.S.C. § 2241(c), and one count of
4 sexual abuse of a child in violation of 18 U.S.C. § 2243(a). Dkt. 1. A federal grand jury
5 subsequently indicted him for committing the same offenses. Dkt. 11. The Federal
6 Bureau of Investigation (FBI) and the Army orchestrated a return trip for Bryant to Joint
7 Base Lewis-McChord (JBLM) and the FBI arrested him upon landing.
8    On July 13, 2023, Bryant plead not guilty to all three counts. Dkt. 17. On
9 September 22, 2023, Magistrate Judge Theresa L. Fricke held a detention hearing. Dkt.
10 28. Judge Fricke found that Bryant met his burden to produce evidence sufficient to
11 overcome the statutory presumption in favor of detention, but nevertheless ruled that the
12 Government met its burden of persuasion by providing clear and convincing evidence
13 that no condition or combination of conditions could reasonably assure the safety of the
14 community. *Id*. at 4. Judge Fricke observed that Bryant did not propose a third-party
15 custody arrangement and reasoned that "each person employed on JBLM" would "not
16 have time or opportunity to keep eyes on him and confirm that he has no access to
17 children." *Id*. at 7. She further reasoned that "[r]eleasing the defendant to be supervised
18 on a military base would be releasing him into the same environment in which the alleged
19 offenses happened" and that "[c]onstant and comprehensive oversight, given the nature of
20 the charges that involve access to child pornography on electronic devices, would be
21 basically impossible." *Id*. at 6. Judge Fricke ordered Bryant detained. Dkt. 28 at 6–7.
22

Bryant moves to revoke the detention order. Dkt. 29. He emphasizes that Pretrial Services (PTS) recommends release and that he will comply with PTS's proposed conditions. *Id*. at 2; Dkt. 26 (Supplemental PTS Report). He asserts that Judge Fricke did not find that he poses a flight risk and contends that his conduct since learning of the investigation and military service supports that conclusion. Dkt. 29 at 3. He explains that, under his proposed release plan, he would reside five miles from his family and notes that they do not oppose his release provided that he does not contact them. *Id*. at 3–4. Bryant contests Judge Fricke's conclusion that releasing him to JBLM would be the "same environment" that led to his alleged offenses. He argues that, in contrast to his housing in South Korea, there are no children in his barracks or place of work at JBLM. He also asserts that he would be subject to location monitoring, but with "exclusion zones." *Id*. at 6. He explains that he does not propose a third-party custodian "because he would be performing his regular military duties while overseen by his chain of command, rather than a single individual." *Id*.

The Government opposes release. Dkt. 31. It emphasizes that the weight of the evidence against Bryant and the grave harm that sexual abuse causes children. *Id*. 7–8. The Government reasons that even if PTS were successful in keeping Bryant physically away from children, he would have "ample opportunity" to gain illicit access to electronic devices if released to barracks where he would be "surrounded by young Soldiers with multiple devices." *Id*. at 8. It further asserts that Bryant poses a flight risk, reasoning that "facing a federal case and a 30-year mandatory minimum creates a strong incentive to flee prior to trial." *Id*. at 6.

ORDER - 4

## II.  DISCUSSION

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). The district court makes its own "de novo" determination of facts, "whether different from or an adoption of the findings of the magistrate." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). Furthermore, "the district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate." *Id*. Because neither party presents new evidence here, the Court declines to hold an evidentiary hearing.

The Bail Reform Act (BRA), 18 U.S.C. § 3142, governs this pretrial detention. Courts assess two primary risks when determining whether to detain a defendant before trial: risk of flight and risk of danger to the community. 18 U.S.C. § 3142(f). The BRA imposes a rebuttable presumption of detention for those charged with an offense involving a minor. 18 U.S.C. § 3142(e)(3). This presumption applies here. Accordingly, Bryant bears the burden of producing evidence that he is not a flight risk or a danger to the community. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The burden of persuasion remains with the Government. *Id*. If the defense successfully meets its burden of production, the Government must then prove that the defendant poses a flight risk by a preponderance of the evidence or that the defendant poses an unmanageable risk of danger to the community by clear and convincing evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); 18 U.S.C. § 3142(f).

The Court adopts Judge Fricke's conclusion that Bryant successfully satisfied his burden of production. Dkt. 28 at 4. His briefing is thorough and provides a release plan that addresses both flight risk and protecting the community. Accordingly, the Court turns to whether the Government satisfies its burden of proving that Bryant poses a flight risk by a preponderance of the evidence or that no conditions of release will reasonably assure the safety of the community by clear and convincing evidence.

Beginning with flight risk, the Court agrees with Bryant's assertion that the Government failed in its burden to show that it is more probable than not that Bryant will fail to appear as required or that he will flee.[2] Although the mandatory minimum sentence is substantial, with the aid of location monitoring and the supervision that his proposed release plan entails on JBLM, the Court is satisfied that his presence can reasonably be assured.

Section 3142(g) requires courts to consider various factors in determining whether there are conditions of release that will reasonably assure not only the appearance of the defendant but also the safety of the community. These factors are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics including physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to

---

[2] The Court notes that, although Judge Fricke did not enter a formal finding on flight risk, she stated during the hearing that "I don't see that there's evidence on this record that would suggest that it is likely Sergeant Bryant would fail to appear for court or likely by a preponderance of the evidence that he would flee." Exh. A at 21-22.

any person or the community that would be posed by the defendant's release. *Gebro*, 948 F.2d at 1121. Of these factors, the weight of the evidence is to be given the least importance, and the statute neither requires nor permits a pretrial determination of guilt. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir.1986).

The Court assesses each of these factors in turn.

**(1) The nature and seriousness of the offense charged.**

The seriousness of the offense charged cannot be overstated. Harm caused by sexual abuse and exploitation of minor children is incalculable. Moreover, the record suggests that Bryant engaged in a pattern of not only abusing children in his home, but actively seeking out more victims through offering to babysit for members of his military community and using websites dealing in sexual exploitation of children.

**(2) The weight of the evidence against the defendant.**

The evidence against Bryant is substantial. The Government possesses documentation of Bryant's alleged participation in the CSAM group. Dkt. 1. Bryant made post-*Miranda* admissions to both assaulting MV1 and MV2 and distributing and possessing child pornography. Dkt. 31 at 7. He similarly admitted to law enforcement that there was an "80% chance" that he would have assaulted the children he offered to babysit in South Korea. *Id.* at 2.

The Court cannot and will not use the strength of this evidence to make a pretrial determination of guilt. *Winsor*, 785 F.2d at 757.  Nevertheless, the evidence here is both relevant and necessary to assess what risk Bryant poses to the community. *Hir*, 517 F.3d at 1090. Bryant's alleged conduct in the CSAM group, his admissions to past assaults,

ORDER - 7

and candor about his willingness to abuse more children demonstrate the risk he poses to minors in the community. The evidence demonstrates not only his willingness to abuse children in his care, but also his knowledge of online communities that provide CSAM material.

**(3) The Defendant's history and characteristics**

Bryant has served in the military and the alleged sexual assaults and exploitation of minors in the present case are the first criminal charges that he has faced. Typically, these facts weigh against detention. Given Bryant's admissions about past assaults and candor about the likelihood of his sexually assaulting more children if given the opportunity, the Government argues persuasively that his lack of a criminal record is likely the result of not having been caught. Dkt. 31 at 7. To some extent, Bryant seems to have utilized his participation in the military to facilitate his access to potential victims in seeking out babysitting opportunities with the children on the military base in South Korea and potentially[3] abusing a child that his wife babysat at JBLM. Dkt. 31 at 3.

**(4) Nature and seriousness of the danger to the community posed by release.**

In the online CSAM group, Bryant demonstrated his willingness to exploit children sexually. Therefore, it is a logical conclusion that he knows how to solicit or consume such content if he gains access to the internet. He similarly admitted to ongoing abuse of both his stepson and daughter. The harm to children and the community from such conduct is severe. This factor weighs heavily in favor of detention.

---

[3] This conduct is not charged in the indictment. Dkt. 31 at 3.

**A.     No conditions of release could reasonably assure the safety of the community.**

The Court finds that Bryant poses a substantial risk to vulnerable minor members of our community. It must now consider whether any condition or combination of conditions can reasonably assure the safety of any other person or the community.

Even if the Court could find that pretrial conditions would likely succeed in keeping Bryant physically away from children, none are sufficient to keep him offline and unable to access websites where he could solicit or consume child pornography. The Government argues persuasively that housing in the barracks will effectively surround Bryant with electronic devices belonging to fellow military members and that the risk that Bryant will find a way to use one such device to access child pornographic material is too great. The Government's allegation that an iPad was recovered under a wall locker where Bryant was housed in South Korea after first facing criminal allegations substantiates this concern. Dkt. 31 at 4.

Bryant does not argue that he is rehabilitated from his sexual attraction to children. Everything in the record makes plain that he poses a risk of sexually exploiting children. The pattern of surreptitious sexual abuse starting as far back as 2017 of both his stepson and daughter in combination with his more-recent participation in the CSAM group reveal his sexual attraction to children is longstanding and ongoing. The military chain of command that Bryant would work and live under if released does not provide sufficient supervision to either protect his past victims or prevent future ones. In sum, when Bryant himself estimates his risk of sexually exploiting children at 80 percent, the Court cannot reasonably assure the safety of the community upon his release.

The Court concludes that there is no condition or combination of conditions of release that could reasonably assure the safety the community or others. The Court accordingly declines to revoke the detention order.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Bryant's motion to revoke detention, Dkt. 29, is **DENIED**.

Dated this 12th day of October, 2023.

BENJAMIN H. SETTLE
United States District Judge